12-3503 Hilco Trading v. Liberty Surplus Insurance Corporation I am Adam Ziffer on behalf of the Appellants Joseph Orders of Walkerville, CT on behalf of the Appellate League, Liberty Surplus Insurance Corporation Andrew Rosadino on behalf of the Appellate League, Illinois Union Insurance Company and the Appellate League, as well as the North American Insurance Company Thank you. Are you going to divide up your time gentlemen? We are. We should be waiting for hours like 15 minutes. Wait a minute. We have a lot of quarterly meetings. That's a little bit longer, but we'll figure it out. Don't worry about it. Okay. Be seated gentlemen. Thank you very much. This is Prohok Bicheng. Pardon me? Prohok Bicheng. Mr. Ziffer? Yes. Okay. I would like to order a coffee. Okay. Do we have it? Thank you. Would you like Counselor Peele? I actually should be, yeah. If that's your co-counselor. Local counsel. And we'll have your name please for the record as well. Emily Peele. Say again? Emily Peele. Thank you, Ms. Peele. All right. Be seated. Thank you very much. And Mr. Ziffer, you'll be arguing. Are you ready to proceed, sir? Yes, I am. Approach. Your Honor, if I could possibly reserve a few minutes for rebuttal? Of course. Of course. Thank you. May it please the Court, my name is Adam Ziffer and I represent the appellants who I will refer to collectively as HILCO appraisers. Counsel, I must interrupt you to begin. Please rest assured that we have all read your briefs and the cases they're in and proceed. Thank you, Your Honor. This case is about the failure of defendant Liberty Mutual to honor its duty to defend its policyholder under a professional liability insurance policy that covers, among other things, appraisal malpractice, a policy for which HILCO paid hundreds of thousands of dollars in premiums. HILCO appraisal performed several appraisals for the benefit of, among others, lenders named Patriot and HVB, who thereafter sued HILCO appraisal, alleging that they were provided with and relied on bad appraisals in connection with a series of asset-backed loans. Let's get to the case. Were they third-party beneficiaries or weren't they? Your Honor, that's not what the policy requires. The policy doesn't say that they had to be provided to third-party beneficiaries. The policy says that they had to be provided to third parties. So the question is, what constitutes third parties under the insurance policy? If you didn't answer my question, were they or weren't they third-party beneficiaries of the agreement to provide the appraisals? I don't know the answer to that, Your Honor. I don't know whether or not they were third-party beneficiaries of the contract between HILCO appraisal and HILCO financial, but that's not an important question in the underlying case because Judge Billick, in denying the motion to dismiss the underlying actions, held that Patriot and HVB had sufficient relationship to bring causes of action. That would be a de novo review. It makes no difference what Judge Billick held. Yes, Your Honor. Second of all, these appraisals all say, use by others is not intended unless express written consent is further granted. And Patriot expressly alleges in its complaint at paragraphs 172 and 174 that the appraisals were provided to Patriot with knowledge and, quote, written consent of appraisal and valuation. So these are appraisals that were provided pursuant to their terms with written consent. Mr. Ziffer, let me ask you this. Just because you allege it in your complaint, does that mean it really happened? I mean, I scoured everything. Are you saying that there was written consent within the context of what the policy required, allowing HILCO to transmit these valuations and appraisals information to a third party? Is that what you're alleging, that there was a document saying you can give this to a third party? I mean, that's what I would be looking for, and I didn't see anything like that. Your Honor, it's not alleged in the coverage complaint, but it is alleged in the underlying complaint. And as Your Honor recognized in the Indiana Insurance Company v. Power Screen of Chicago Limited case, if an underlying complaint, the Patriot complaint, alleges facts within or even potentially within the policy's coverage, the insurer's duty to defend arises even if those allegations are groundless, false, or fraudulent. Now, wait a minute. Let me ask you a question about this. The underlying complaint, who was the plaintiff and who was the defendant? In the underlying complaint, Patriot and HVB, the lenders, third parties to this insurance contract undisputedly, are the plaintiffs. The defendants, among others, include HILCO appraisal and HILCO valuation, the plaintiffs that are seeking coverage in this case. So do you contend that the allegation that there was written consent given bore some relevance to that cause of action, or was it just thrown in in order to effectuate an argument for coverage? Absolutely bore relevance to that action because in that case, Patriot and HVB had to establish that there was a sufficient relationship and a sufficient understanding between them as the recipients, those who were provided with the appraisals, and HILCO appraisal, who provided the appraisals to give rise to a claim for negligent misrepresentation, which is the claim they were seeking to establish. So let me ask you a question. Let's look at what the net result of this case could or could not be. The appraisals clearly state that unless there's written consent, it's not intended to be used by anybody other than HILCO financial. You make the allegation or the allegations made in the underlying complaint that written consent was given. You don't know whether they were third-party beneficiaries or not. So you can see the fact that on a motion for summary judgment, if we send it back, if you can't show written consent, you're gone. No, Your Honor. And you don't. Why not? Absolutely not, because a duty to defend is evaluated based on the allegations of the underlying complaint, even if they're false, as Justice Cunningham recognized. No, no, no. I'm sure she does. That's not the question I asked you. If it goes back down and no written consent is found in the underlying case, as a matter of fact, you then concede you're lost on the duty to indemnify? No, Your Honor, for two reasons. And I understand you're talking about in the underlying case that there's a finding that there was no written consent. Number one, the appraisal services, right, the professional services we're talking about here, are much more than a summary appraisal report. It's the evaluation of the value of these assets that back these loans. This entire bundle of transactions, everybody understood, including HILCO appraisal, including HILCO financial, and including the lenders, that, and Patriot alleges, they had veto power over these loans. They were going to get a bundle of materials to evaluate whether or not to authorize each loan, in addition to entering into the agreement in the first place. So why do you say you don't know whether they were third-party beneficiaries or not? It occurs to me that that would be the most reasonable argument you could possibly have. Well, Your Honor, third-party beneficiaries is a very technical requirement that's not required in the context of the underlying claims. There's not a claim for third-party beneficiary breach of contract in the underlying cases. It's for negligent misrepresentation. And to establish a claim for negligent misrepresentation, what the Patriot and HVB have to show is that the nature of the relationship was that it was intended and understood that they would be relying on the appraisal. And the fact that the policy says all they have to do is be provided with the professional services is a much lower standard than that for negligent misrepresentation or that for third-party beneficiary status. Counsel, let me ask you, as far as the duty to defend, the large analysis of duty to defend versus when the triggers kick in, which one do we do first and how do they interrelate? In terms of triggers, do you mean which policy time-wise? No, no, no, the triggers of professional services provided to a third party and the monetary fee. Well, Your Honor, I think the duty to defend analysis and the broad standards that apply to the duty to defend are evaluated at the same time as we are evaluating whether or not the insuring agreement is satisfied. And here, the crux of it, as Your Honors have recognized, is whether these services were provided to a third party or not. Here, you have to construe the underlying allegations in the light most favorable to coverage on a duty to defend and if there's any possibility that they could fall within coverage. So Your Honor asked about whether or not if there was a finding in the underlying case, summary judgment, that there was no written consent. At the duty to defend stage, there is the possibility that there would be the opposite finding and therefore a duty to defend applies. If it were found in the underlying action that there was no written consent, it occurs to me that these appraisals state, unless there's written consent, not intended to be used by anyone other than Hillcote Financial. You've got a real problem in that case. On the question of indemnity, I'm sure Liberty will make the argument if such a finding is made in the underlying case that absent written consent, these don't satisfy the coverage right here. But on the duty to defend, which is what we're here addressing today. Counsel, we understand what the standards are and we understand why you're here. Okay. And Your Honor, there's another, there's an additional alternative reason why, even if that were a finding, you still should find a duty to defend and there could be a duty to indemnify notwithstanding such a finding in the underlying case and that is because Hillcote Financial, who received the appraisals in the first place, is also a third party vis-a-vis Hillcote Appraisal who provided those appraisals. If Liberty wanted... Wait a minute. Try that again. What did you just say? The policy requirement that appraisals be, that the services be provided to a third party is satisfied by the provision of the appraisals to Hillcote Financial. Liberty wants to read third party as meaning non-insured. Hillcote Appraisal and Hillcote Financial are separate entities. They are third parties to each other. The third party requirement is there so that Hillcote Appraisal can't lend on its own appraisals and then bring a claim. If Liberty wanted to require that an appraisal that was provided to another insured not satisfy that grant of coverage, then it was obligated to use the defined term non-insured in order to do so. Counsel, is there any hard and fast case that tells us the definition of third party? Not in this context, Your Honor, no. So what do we take from that? That it hasn't come up and possibly that it hasn't really... I don't know. It hasn't come up in this context. The ANCO case, obviously, is a case that addressed it, but the import of the ANCO case on this issue is that there is a duty to defend, as the Tenth Circuit found where professional services are provided both to insureds and other third parties simultaneously, there's a duty to defend as the Tenth Circuit held with respect to all seven of the underlying actions in that case. So the only case that touches it, Your Honor, supports the precise relief that we're seeking here. Okay. Of all the counts that were in the other two, the HVB and the Patriot actions, the only ones that remain are the negligent misrepresentation. Is that right? With respect to HILCO appraisal and HILCO valuation, that is correct. That's it. It's one count? That's one count. And that's what they're defending against, and they're actively defending against those claims. And, again, this is something out of Justice Cunningham's opinion in the Power Screen case, an insurer's duty to defend arises even where only one of several theories of recovery alleged in an underlying complaint is within the potential for recovery. What's the policy definition for professional services? Professional services are defined to be various activities that are identified. Why don't you just read it? It's in the brief, isn't it? Sure, Your Honor. Professional services are defined to be value opinions in support of asset-based lending. That's a relevant portion for our purposes, which are provided by the insurer to a third party for a monetary fee. Again, that's where if... So in order for there to be coverage, the asset-based services would have had to have been rendered by an insured to the third party. Correct. Okay. And the insured was whom? HILCO appraisal. HILCO appraisal. And what does the HILCO appraisal say about who it's rendered to? Not rendered to, but provided to. Who is it saying it's provided to? HILCO appraisal is defending the underlying assets. I asked you a question. I didn't get that. HILCO financial. HILCO financial. And what does the appraisal say in addition to that? That only HILCO financial could use it absent written consent to be used by others. Right. Okay. That has been an insufficient defense for HILCO appraisal and valuation in the underlying actions. They have not been... They're being whipsawed here. They can't get out of the underlying case by saying, we said this was only for appraisal and nobody else's use. But then we come to Liberty, and Liberty says, well, you're saying it's only for HILCO appraisal and no one else's use, so we don't have to cover you because you have to provide it to third parties. This is exactly the type of situation that HILCO appraisal shouldn't be in, especially because Liberty used the phrase provided to a third party. It didn't say rendered to a non-insured that was its client. In fact, this policy covers claims arising out of appraisals provided to third parties. It doesn't restrict the potential claims to those who are clients or who signed the formal engagement letter. So, Mr. Ziffer, you are defining provided to a third party as the action of HILCO financial telling these other, these parties that it's based on valuation and appraisals assessments, okay, to lend the money. Is that what you're defining? How are you defining provided to? I'm defining it as the Patriot and HVB complaints define it. HVB alleges in paragraph 109 that HILCO appraisal delivered or caused to be delivered to HVB a copy of the appraisal. That's HVB's definition of what happened, the facts of the case. I'm saying that when HVB says appraisal delivered to us, a copy of the appraisal, that satisfies the policy's requirement that appraisals be provided to a third party. And when Patriot in paragraph 172 and 174 of its complaint says that appraisals were provided to Patriot with the knowledge and written consent, HILCO appraisal and HILCO valuation, that satisfies the policy's very narrow requirement that they be provided to a third party. And, Your Honors, there's another duty to defense standard that's important to keep in mind here. The Illinois Supreme Court, an American state insurance company versus Columbus, it's 177 Illinois 2nd 473 at 479. The Supreme Court said that, quote, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer. And here, liberty is attempting to use the word, the phrase, third party in a way that limits coverage. And, therefore, the court is constrained to interpret it liberally. It occurs to me from reading your brief, you would rather have us read professional services to mean provided for the benefit of the third party as opposed to the language of the policy that says provided by the insured to a third party for a fee. We're very comfortable with provided to a third party because Patriot and HVB allege that they were provided with the appraisals. There's no dispute that they allege it. And that's sufficient to satisfy the duty to defense. Counsel, do you want to finish up? Essentially, Your Honor, to provide liberty with the relief it seeks would be to say that they sold POCO, a policy that covered appraisal malpractice, but only if the appraisals were given to a non-insured who signed an engagement letter and weren't provided to another insured at the same time, even though Liberty didn't write any of those requirements into the policy itself. Counsel, thank you. Thank you. Counsel? If it pleases the Court, Joseph Borders on behalf of Liberty Surplus Insurance Company. This is a case of straightforward contract interpretation. The contract was a professional liability insurance contract pursuant to which my client was obligated to defend and indemnify various HILCO entities for professional services. Professional services is defined specifically. Professional services means those services specified in Item 7, which include appraisal services, which are provided by the insured, a defined term to include all of the HILCO entities, to a third party for a monetary fee. So the critical question and the only question with respect to coverage in this matter is, who did the HILCO appraisers provide their services to? Not who can sue the HILCO appraisers because they provided those services. Wait a minute. Is the fee part of what you just said important or not? Because Mr. Ziffer had an argument about the provided part where he says the underlying complaint satisfies that requirement by saying that the information was provided to the banks or to the entities to get the money. So what about the fee? The fee is a crucial part, Your Honor, and at this stage we don't know whether a fee was provided. One of the underlying complaints alleged that HILCO Financial paid a fee for the appraisals, but there's been absolutely no proof that a fee was actually paid. But it doesn't matter if there's proof or not if it's alleged in the complaint? Actually, Your Honor, I believe in the Illinois Supreme Court has held that the purpose of the declaratory judgment action, you could go beyond the eight corners, the four corners of the complaint, and the four corners of the policy to determine whether or not those facts are correct. So it can be established that no fee was paid regardless of what is alleged in the complaint. We believe that then any duty to defend that may have existed would be extinguished. Let me ask you a question. Must the appraisals have been provided by the insured or merely provided with the written consent of the insured by someone else? If I may just slightly restate the question, the appraisal services must be provided to a third party. However, the appraisal reports are what the HILCO entities are now trying to rely on, saying that, well, HILCO Financial, the recipient of the services, gave the reports to the banks, and therefore there's coverage. HILCO Financial applied for loans. As a matter of fact, HILCO Financial isn't a party in this lawsuit. They are not a party in this appeal, the sole party in this appeal. Is that really necessary that they be parties? I think if they're trying to get coverage under the policy now, Your Honor. The policy speaks in terms of provided by the insured to a third party. Who provided those appraisals to the third party? The appraisal report was provided by HILCO Financial. Is HILCO Financial an insured under this policy? It is, Your Honor. So if he makes the case that the underlying complaint alleges that it was provided with the written consent of appraisal and valuation, if we can call them that, even though it was provided by HILCO Financial, we've got a provision of the report by an insured to a third party, and it occurs to me that how do you separate the services and the report itself? Well, the plaintiff, for instance, in the page reaction did just that. Paragraph 126, which is one of the paragraphs that the HILCO entities are pointing to, says, further evidence that HILCO appraisal and HILCO valuation knew that the appraisals they performed for HILCO Financial would be provided to Patriot. Right. Okay, so the services that they performed were for HILCO Financial. They then issued a report which had a disclaimer in it, which said only you, who we provided these services for, can rely on this report. But you try and separate the appraisal report from the service itself. The service is useless without the report. Nobody knows what it is. I mean, if I hire somebody to appraise a piece of property for me, and they never tell me what the appraisal is, where are we going here? The way they tell me is through the report. That is the service. Absolutely, Your Honor, and that service was performed for you. So if you're applying for a loan, you have that appraisal so you can. No doubt about it, but if I'm an insured and you provide it to me, and I'm also an insured and I provide it to a third party, why isn't there coverage? Because you are not, by applying for a loan, Your Honor, you are not providing professional services to your lender. You're applying for a loan. I don't care about that. We're talking about liability of the person who performs the appraisal. And that's what I'm saying, Your Honor, is we're not talking about liability of the appraisers. We're talking about that's exactly the confusion that Hilco is trying to create. We are not talking about the liability. Whether or not the Hilco appraisers could be liable to the banks is irrelevant. The key question for coverage is who did they provide their services for? No, the key question for coverage is if the appraisals can be liable to the bank, does Liberty have to indemnify them for that liability? That's the question. And so for that we look to Liberty's policy. And so what does Liberty's policy say? We're insuring for professional services. And what are professional services? Professional services are, you know, this appraisal business provided by the insured to a third party for a fee. Is that not the case? That's exactly the case. But what I'm saying, Your Honor, is the result of those services, the report that they provided to their client, Hilco Financial, is who they provided the services for. What then Hilco Financial did with that report, shopping it around to get loans, doesn't convert the banks, HBB and Patriot, into someone who had services provided to them by Hilco. You're still trying to separate the report from services, and I'm philosophically having trouble with that. As Justice Hoffman said, without the report, the valuation is useless. If you perform an appraisal or a valuation and you never tell anybody what it is, what's the point? The point is, Your Honor, though it has value, and what the letters and the appraisals themselves say is the value is to you, the party that retained us. You can rely on this. This is our report. Here is what this collateral is worth. If we were wrong, then you could come after us. So when Hilco provides this information to whoever it is they provided to, to get the money, isn't that providing it to that person for purposes of coverage, bearing in mind that, you know, the duty to defend is greater, there's a lower threshold in terms of applying a duty to defend than there is for a duty to identify. Isn't that, if they allege that in their complaint, doesn't that meet the threshold? No. And what I'm saying, Your Honor, is they don't allege that in the complaint. He says they do. Respectfully, he's wrong. No. Really? Okay. The complaints, all of the evidence in the record establishes that the services, the initial services that were provided were provided to Hilco Financial. There were a number of different lending transactions that went on here. Hilco Financial was an asset-based lender. It retained, it went to its sister company and said, okay, somebody wants to borrow money using rail cars as collateral. What's the value of that collateral for liquidation purposes if we issue the loan? Hilco Financial, the Hilco appraisers then issue an appraisal to Hilco Financial for which they decide whether or not to issue that loan. But they're separate companies. I mean, the fact that they all seem to be named Hilco this or Hilco that, but they're all separate companies, aren't they? They are all separate companies, and they're all parties to the insurance contract. And one other place where I believe Mr. Zipper misspoke was he said, well, there's no cases that interpret what third party means in this context. There's a whole host of cases in Illinois and outside of Illinois that says a third party is someone who is not a party to the contract. The contract here is the insurance contract, and both Hilco Financial and the Hilco appraisers were insured to the contract. So they cannot both be an insured, i.e., a party to the insurance contract, and a stranger, i.e., a third party to that same insurance contract. So therefore, there is no coverage if the services were provided to Hilco Financial. And maybe the way to illustrate this would be in the terms of let's say there's a professional liability policy for an auto dealership that also does repairs. The policy covers repairs performed at the dealership that result in claims for service, repairs performed at the dealership for a third party. The insured includes both the subcontractor that the dealership's retained to perform the repairs and includes the dealership itself. The subcontractor not only repairs customer's cars, for which there would certainly be coverage under the policy, but it also repairs the fleet of loaner cars that the dealership itself owns. When the mechanic works on one of the fleet cars that's owned by the dealership, he severs the brake line. Those services that he performed when he accidentally severed the brake line were for the dealership. Was it conceivable that a customer would end up with that loaner car and become involved in an accident? Absolutely. Could that customer sue both the dealership and the subcontractor for negligence? Absolutely. But it doesn't change the fact that the services that he originally performed were performed for the dealership. Now, let me ask you a question. Does timing enter into this? In other words, at the time that the services were performed by appraisal and valuation, was there any intention to provide the report, was there any indication there was an intention to provide the report to the bank at that point in time? There is nothing in the record to support that. This kind of gets to your question. I want to take this one further. Yes, sir. Assuming for a moment that there is no indication or no allegation there was an intention to provide the services or provide the reports to the bank at the time the services were performed and the appraisals were rendered to Hillco Financial, although they knew Hillco Financial would use those appraisals to peddle the loan somewhere else at some future date. If at a later date, after the reports had been tendered to Hillco Financial, appraisal and valuation give written consent for some third party to rely on those appraisals in their dealings with Hillco Financial, does that bring them up within coverage? It does not, Your Honor. It opens them up to liability, which is what we have here. But it doesn't provide them with coverage. And that's, again, what I would say is the key issue. Now, Patriot and HPB are sophisticated lenders. If these services were indeed being performed by them, they are not going to accept an appraisal report that says only Hillco Financial can rely on them. We're only working for Hillco Financial. It's ludicrous that they would go along with that. Everyone knew that these were the appraisals that were just submitted in a lending package, but that those services were performed solely for Hillco Financial. The result, if one thinks about it, this is an asset-based lender. They convert their professional liability policy into a guarantor of their loan simply by hiring themselves to assess the collateral and then borrowing money to cover the loan. So if they want to get into high-risk loans, no problem. All they have to say is the appraisals were negligent. We can't pay off to the people we borrowed money on this, so therefore pay it off. Counsel, can I ask you, your strongest case for the proposition of the third party cannot be insured. Yes. You rely on your brief on XL Disposal versus John Sexton. Is there any other case other than that Illinois case that you rely on for that? Your Honor, I don't have a case site handy. If the Court wishes, I will happily supplement my brief with a list of it. I mean, you mentioned Illinois cases, but I was wondering if there was something other than what you had cited. There may have been, and I just chose that one because I thought the language was most appropriate, but I can say that I did not find a single case in any U.S. jurisdiction that went the other way. All right. Thank you. All right. Counsel, do you want to finish up? Thank you. Five minutes, Counsel. You have a form following policy. You rise or fall based on him. Yes, Your Honor. May it please the Court, my name is Angelo Savino. I am here today representing Illinois Union Insurance Company as well as Ace American Insurance Company. Which is it? Well, it's both, Your Honor. Plaintiff originally brought the action for coverage under two different policy periods. The 2008-09 policy period is the one that all of the argumentation today has focused on. That was an insurance program comprised of Liberty's primary policy and Illinois Union's first excess policy. Although in the complaint, plaintiff sued Illinois Union as Ace American. That was incorrect. Illinois Union, nevertheless, appeared in the action, answered the complaint, and has participated in the case through this appeal. Because we're a follow-form policy, we adopt the arguments that Liberty has made today. I won't burden the Court with repeating all of those arguments, although I would like to emphasize that a number of the questions today have focused on the policy language that I really think is the key to this case. That is the definition of professional services, which requires that the services be provided by the insured to a third party. And I think the word the in that definition is really the key. When analyzing whether coverage exists, we're analyzing whether coverage exists for a particular insured. As of today, those insureds are appraisal and valuation. Those are the insureds. And plaintiff has conceded that those are not the insureds that rendered the professional services to the banks. Other than that, as I indicated ñ Well, they're not making the allegation that they didn't render the professional services to the banks. They're making the allegation that they didn't provide the appraisals to the banks. That's a little bit different than rendering the services to the banks. We know it was financially gave them the appraisals. It wasn't valuation and appraisal. But it was valuation and appraisal that did the appraisals. So the question becomes, did they provide their professional services to the banks, yes or no? Not when all the evidence in the record, Your Honor, indicates that they provided those services to Hillco Financial with restrictions on the provision of those services that they could only be used by Hillco Financial and could not be Well, that doesn't answer my question. That's fine at the time the appraisals were handed to Hillco Financial. But if at some future date the insuredsí appraisal and valuation give their consent, written consent, for those appraisals to be given to the bank, understanding the bank will rely on, is that the provision of professional services to the bank? I would say that is not the provision of professional services to the bank. The services were provided to Hillco Financial. If appraisal and valuation subsequently give consent for Hillco Financial to use those services, that report, for some other purpose. And for someone else to rely upon. They can open themselves up to potential liability for negligent misrepresentation by doing that. They cannot, as Mr. Borders indicated, open themselves up or open up the policies for coverage simply by giving that consent at a later date. Can you give me a hypothetical when it would be, that you would consider a change in the facts where they would be given their consent that it could be provided to a third party within the meaning of the policy? Because I, what would constitute that? If the example that Justice Hoffman asked you is not that, what would constitute that? I'm not sure, Your Honor. I would have to think about that. The problem is that's not the situation we've been confronted with. The situation we've been confronted with is that appraisal and valuation provided the services to financial and financial then turned it over to someone else, and there's no indication of when consent, whether consent was ever given. No, but the only way the allegation of consent was given, it was written. And he's right about that. That allegation has to be taken as true for the analysis. I'm not sure that's the end all and be all. The end all and be all is, is the giving of the consent that allowed the banks to rely on these appraisals, if that's true, does that amount to the rendition of professional services to the banks? Because they clearly are the third parties. You'll go financial, you're right, cannot be a third party to this. They're insured. So the question becomes, if at some later date I allow my opinion in professional services to be given to someone else, with the intention that they rely on, am I actually providing those services to that third party, or am I not? I don't think you're providing professional services to that third party simply by doing that. You've been retained by Hillco Financial to provide specific services, provide a valuation to enable Hillco Financial to engage in its asset-based lending. That's it. Now, you can correct me if I'm wrong, but as I read this, it would be my understanding that Hillco Financial would get the appraisals from appraisal and valuation, and appraisal and valuation has full knowledge that Hillco Financial is going to use this to peddle to somebody at some future date. But the somebody is not necessarily known at the time the appraisals are handed to Hillco Financial. The somebody becomes known at a later time. Under that hypothetical, Your Honor, it couldn't be the providing of professional services to an unknown third party. It couldn't be. So my question is, when did the bank enter into this vis-a-vis the handing of the reports from valuation and appraisal to financial? Later? We would have to assume later. We'd have to assume later. I mean, is there any indication that there was a relationship between financial and the bank at the time the reports were first given to financial? I've seen none, Your Honor. All I've seen is the way plaintiff has framed this case in the insurance case is that it's really a two-stage process. The professional services are provided to Hillco Financial, stage one. Stage two, Hillco Financial at some later point turns around and uses those reports to peddle. To what level? It's financing, it's borrowing abilities to a bank. And they're separate and distinct phases of the transactions. They're two different transactions. Having addressed those arguments, the one last thing I'd like to address is to turn our attention to Ace American Insurance Company momentarily. Ace American was only involved in the 2009-2010 policy period. It was first excess insurer in that policy period following Liberty's policy in that policy period. Continental Casualty was also an excess insurer in that policy period. Plaintiff has since dropped all claims for coverage with respect to the 2009-2010 policy period. Continental Casualty moved this court to dismiss the claims against it, to dismiss the appeal as to it, and that motion was granted. Ace American has also moved the court to dismiss the claims against it, and that motion remains pending. We would respectfully request that the court grant that motion as to Ace American since plaintiff no longer has any claims asserted against it. Thank you, counsel. Any questions? Anything you'd like to say about the motion as you begin, Mr. Ziffer? We don't oppose the motion. Thank you, sir. Final words, then. Thank you. I want to focus a little bit on the nature of what this relationship and transaction was about. This was not a circumstance, and it goes to Your Honor's question about timing. This was not a circumstance where I got an appraisal on a property I wanted to buy, and I went and shopped it around to, quote, counsel to various lenders to see if they'd be interested in relying on it. This was an integrated series of transactions where there were credit facilities that were open. So this is effectively lines of credit that Patriot and HVB opened that they understood Hilco Financial was going to come to, to request loans against with appraisals that were going to be prepared by Hilco appraisal. Most starkly in the allegations of the Patriot complaint at paragraph 167, Your Honor asked whether or not they knew at the time that the appraisals were performed that they were performing them for the lenders. And the answer that was given was no, but that's not the allegations of the complaint. Patriot at paragraph 167, C-100 of the record. The appraisals were reviewed and approved by senior management at Hilco appraisal and Hilco valuation before they were delivered to Hilco Financial with the knowledge and understanding that they would subsequently be forwarded to Patriot at the time they performed the valuation services. Everybody, well, the allegations are that everybody understood Patriot was going to get them. The HVB complaint talks about meetings, and this is early on in the complaint around paragraph 4. Was Hilco's understanding that that would be forwarded to Patriot? Hilco's, Patriot's, everybody's understanding. Everybody knew the way this was going to work, certainly according to the allegations of the complaint. HVB early on its complaint around paragraph 40 talks about meetings that were put together before it opened up its credit facility with Hilco appraisal representatives where they said these are the folks who are going to be doing the appraisals that you are going to be presented with when you decide whether or not to authorize loans. Patriot talks about its veto power, that it would choose whether or not to exercise what it got loans it knew it was getting from Hilco appraisal. And in the HVB complaint, kind of a counterpart allegation is at paragraph 103. Appraisal and valuation, that's Hilco, specifically encouraged and intended HVB to rely upon their appraisals in determining whether to advance funds under the credit agreement. So the allegations of the underlying complaint make clear everybody, Hilco appraisal and valuation, Hilco financial, and Patriot and HVB all understood that these services, these appraisals were going to be provided to and relied upon by HVB and Patriot in determining whether or not to authorize. Back to the question I asked before, is provided to and provided for the benefit of virtually synonyms in the context of this case. Absolutely. Absolutely. And that's why, and the reason why I would even say that for negligent misrepresentation, it's a higher hurdle. No, no. That's irrelevant because as your opponent has said, they may have opened themselves up for liability, but that doesn't mean that what they did falls under the coverage provided in this policy. That's correct. So the issue then becomes, does the bank fall within the definition of the third party under professional services as stated in the policy?  So, and that's why I asked you the question, is provided to a third party virtually a synonym for provided for the benefit of a third party under the facts of this case? Provided to a third party is broader. That's my point. It's broader. So I may be shopping around this appraisal that I got in a property, but it wasn't provided for the benefit of those banks. It may have only been provided for the benefit of me, but it was provided to them. Here, what you have is you have these appraisals that were both provided to HVB and Patriot as they allege. And again, HVB alleges it was provided directly by HILCO appraisal, and that's in paragraph 109. And there was also the intent of the relationship was to benefit HVB and Patriot with these appraisals. So you have both being satisfied here, which is why there's liability and why there's coverage under the policy. I asked for the timing question because I don't think you can have it for purposes of coverage under the policy, an intent to benefit an unknown. So the relationship between the bank and Patriot and HILCO Financial must have existed at the time the services by appraisal and valuation were rendered with the full knowledge that it was going to be used by HILCO Financial in its relationships with and that Patriot and the bank would rely on it. And it was going to be used by Patriot and HVB in determining whether or not to authorize the loan. Well, that's what I'm saying. So they're relying. So the timing question becomes important, I think, in a determination of whether these services were provided by the insured appraisal or valuation to the third party, meaning to the bank and Patriot. Absolutely. So they have to be known and the relationship has to be in existence at the time the services were rendered. And the underlying complaints make that abundantly clear. So your answer to that question is that, yeah, they knew it. They knew that Patriot and HVB were going to be provided these appraisals and it was clear from the beginning it wasn't an unknown third party. It was these two entities. Is that what you're saying? Absolutely, Your Honor. And that's reflected in the underlying actions, which satisfied the very limited and narrow language that Liberty chose to use in his policy, whether or not these professional services were provided to third parties. Counsel, thank you. Thank you. Thank you, Your Honor. Ladies and gentlemen, thank you for your presentation here today. And we will take this under discussion. Thank you.